A. I. PEDERSEN CO., INC., *v.* IMPERIAL EXPORT TRADING CORPORATION and W. CARL RICHARDS, as Trustee for the Chinese Government.

Supreme Court, Special Term, Kings County, March 5, 1940.

*Scheilke & Aliano*, for the plaintiff.

*David V. Cahill*, for the defendant Imperial Export Trading Corporation.

*Sullivan & Cromwell*, for the defendant W. Carl Richards.

LOCKWOOD, J.   On January 6, 1938, the Republic of China agreed to purchase from Emanuel Dias 240 Colt machine guns and 2,000,-000 rounds of ammunition for $256,000, and on giving the order paid $71,500 by check and $214,500 in notes of the republic.

Later Dias reported that the Colt guns were in Bolivia, and that government refused to allow them to be exported, unless the buyer also purchased an old battleship.

Not knowing how to get an old warship from the coast of Bolivia to the interior of China, the transaction of January sixth was canceled and on April 6, 1938, the then Chinese Ambassador to Washington gave Dias a letter order for 350 *new* 50 calibre Vickers machine guns at $900 per gun (total, $315,000), to be paid part cash and part notes of the Republic of China indorsed by the Bank of China. The order was given subject to inspection and approval by the Chinese military attache when the guns were assembled and completely set up.

On April 23, 1938, Dias returned the $214,500 in notes received when the Colt gun contract was signed, acknowledged receipt of the order for 350 *new* Vickers 50 calibre machine guns and stated that (1) the contract had been assigned to his Kaydee Export Trading Corporation, (2) the Kaydee Export Trading Corporation had purchased 350 *new* Vickers 50 calibre machine guns, (3) the $71,500 cash payment made on the January 6, 1938, Colt gun agreement was to be applied as a down payment on the purchase price of the 350 new Vickers guns, and (4) to secure the $71,500 the Kaydee Corporation had executed, in favor of W. Carl Richards, trustee for the Chinese government, a chattel mortgage on the 350 new Vickers guns.   This letter contract was accepted and approved in writing by the Chinese Ambassador April 26, 1938.

On this trial it developed that the Dias interests had purchased for $25,000 or $30,000 a large quantity of surplus war material originally costing from $200,000 to $300,000, which some years ago had been disposed of by the United States government and has long been stored in a cellar on Warren street, New York.

Among the surplus material so purchased by Dias after he received the $71,500 from the Chinese government and removed by the Dias

company to a 40 by 100 foot building in Jersey City leased for fifty dollars per month, were about 350 old Vickers 11 mm. machine guns, built for and used on fighting planes in the World war, all in need of repairs, reconditioning and rebuilding from 11 mm. aeroplane guns into 50 calibre tripod mounted anti-aircraft and anti-war tank guns to meet the requirements of the order.

The Kaydee's successor, The Imperial Trading Corporation (Dias owned), employed a few men in its Jersey storage building, but lacked the machinery, which alone would have cost $25,000, other facilities, and the skilled mechanics to convert these guns.

The work was necessarily let out to various machine shops and among those who performed labor and rendered services was the plaintiff, A. I. Pedersen Co., Inc., whose plant is in Bay Ridge.

Before the work was completed, Dias went west, the defendant Imperial Export Trading Corporation exhausted its funds, the subcontractors were not paid, and these guns meant for the fighting men of China were never assembled and never reached them. The parts on which plaintiff Pedersen did work are still in its plant and it here seeks a judgment for the sum due it for work, labor and services, $3,381.48, with interest from July 2, 1938, and asks to have its lien adjudged to be prior to that of the chattel mortgage held by the trustee. Other parts of the guns are in other shops in Brooklyn, Manhattan and Jersey City.

If the trustee was informed of, and acquiesced in, the removal of the guns to plaintiff's plant, where they were to be worked upon, plaintiff's lien is prior to the chattel mortgage.

Section 180 of the Lien Law reads: " A person who makes, alters, repairs or in any way *enhances* the value of an article of personal property, at the request or with the consent of the owner, has a lien on such article, while lawfully in possession thereof, for his reasonable charges for the work done and materials furnished, and may retain possession thereof until such charges are paid." (Italics supplied.)

The trustee testified that he assumed all the work was being done at the Jersey City building, but the superintendent of the trading corporation and its president both testified positively that the trustee visited the building in Jersey City several times and the Dias offices in New York many times, that he was informed that the work would have to be done in specially equipped machine shops and that he consented to the removal of the guns and their parts for that purpose; that he was kept informed of the progress of the work and notified when the first, or model, gun was completed for the test at Cape May, N. J., at which it was passed and approved by the Chinese military attache.

The Chinese Ambassador contracted for 350 *new* Vickers machine guns at $900 apiece and was credited with the $71,500 cash, which he had paid on account of the first order. The proof shows that neither Dias nor his companies ever owned any *new* Vickers guns but that these old guns were being sold from the cellar of the building in Warren street, New York, to American Legion posts and others for from five dollars to seven dollars and fifty cents a gun, and the Dias interests, in taking a large quantity of discarded war material, did not pay more than three dollars or four dollars for each of the guns. The president of the trading corporation, an ordnance expert, testified that the cost of rebuilding and remodeling would have been about $95 per gun, a total cost per converted gun of $100, or for the 350 the sum of $30,500, against a sale price of $900 per gun, or a total of $315,000.

Evidently the buyer placed full reliance upon the seller for no effort seems to have been made to inspect the twenty-year old discarded guns sold and bought as new, value and price were not checked and no one thought of taking some of the grossly excessive profits out of war.

Traffic in arms and other supplies for troops has been the profiteers' game for ages, but usually the bad beef, the paper-soled shoes and the cotton clothing reached the men at the front. Here the profiteers took the money and delivered nothing.

On the record, the court finds the trustee consented to the work being done by the plaintiff which it is conceded did the work well and should be paid. The court holds that plaintiff has a prior lien on the parts in its possession.

Submit judgment for plaintiff on notice.